## THE PILOT.

### THE PILOT v. UNITED STATES.

### DUNSMUIR v. BRADSHAW, Collector of Customs.

Circuit Court of Appeals, Ninth Circuit. December 1, 1892.

Nos. 30, 31.

CIRCUIT COURT OF APPEALS—JURISDICTION—TREATIES—FOREIGN WATERS.

The treaty between the United States and Great Britain of June 15, 1846, fixes the boundary between the two countries in the straits of San Juan de Fuca by a line following the middle of the strait; but the same treaty secures to each nation a right of free navigation over all the waters of the strait. Rev. St. § 4370, imposes a penalty against foreign tugs towing American vessels from one American port to another except where the towing, in whole or in part, is on foreign waters. *Held,* that the circuit court of appeals has jurisdiction of an appeal from a decree in admiralty holding that the waters north of the boundary established by the treaty are not "foreign waters," within the meaning of the statute, since neither the validity nor the construction of the treaty is drawn in question, so as to require that the appeal should be to the supreme court, under the judiciary act of March 3, 1891, § 5, subd. 5, (26 St. at Large, p. 826.)

Appeals from the District Court of the United States for the Northern Division of the District of Washington.

In Admiralty. Libel by the United States against the British steam tug Pilot for towing an American vessel between American

ports, in violation of Rev. St. § 4370. A decree for libelants was entered in the district court. 48 Fed. Rep. 319. Joan Olive Dunsmuir, owner of the Pilot, appealed to this court, and the decree was reversed. 50 Fed. Rep. 437, 1 C. C. A. 523. Libelant now moves to vacate the decree of reversal, and to dismiss the appeal, on the ground that under 26 St. at Large, c. 517, § 5, subd. 5, the circuit court of appeals had no jurisdiction of the case. Denied.

Also, a libel by Joan Olive Dunsmuir, owner of the British steam tug Lorne, against Charles M. Bradshaw, collector of customs of the United States for the district of Puget sound, to recover money paid by her under protest in order to release the Lorne from a seizure made to enforce a fine for violation of Rev. St. § 4370. In this case the libel was dismissed, libelant appealed, and the decree was reversed. 50 Fed. Rep. 440, 1 C. C. A. 525. The libelee now moves to vacate the decree of reversal, and to dismiss libelant's appeal, on the ground that under 26 St. at Large, c. 517, § 5, subd. 5, the circuit court of appeals had no jurisdiction of such appeals. Denied.

Rev. St. § 4370 provides: "All steam tugboats, not of the United States, found employed in towing documented vessels of the United States, plying from one port to another, shall be liable to a penalty of fifty cents per ton on the measurement of every such vessel so towed by them, respectively, which sum shall be recovered by way of libel or suit. This section shall not apply to any case where the towing, in whole or in part, is within or upon foreign waters." The treaty between the United States and Great Britain of June 15, 1846, fixes the boundary between the two countries in the straits of San Juan de Fuca by a boundary line following the middle of the strait, and also secures to each a right of free navigation over the entire waters of the strait. 26 St. at Large, c. 517, § 5, subd. 5, provides that "appeals or writs of error may be taken from the district court or from the existing circuit courts direct to the supreme court, in any case in which the constitutionality of any law of the United States or the validity or construction of any treaty made under its authority, is drawn in question."

Burke, Shepard & Woods, for appellants.
Charles A. Shurtleff, for appellees.

Before McKENNA and GILBERT, Circuit Judges, and MORROW, District Judge.

PER CURIAM. It is perfectly clear that the validity of the treaty was not "drawn in question." The case, upon the facts, simply called for a construction of section 4370, Rev. St. U. S., as to what was meant by the words "foreign waters." No rights were directly claimed under the treaty. No question of the jurisdiction of either nation over the waters of the straits, on either side of the boundary line, was involved. The question of the construction of the treaty, if raised at all, was only incidental, as to a question of fact not denied by either party, to wit, the right of both nations to have free and open navigation over the waters of the straits. The statute of the United States was to be construed with reference to the existing state of facts under the treaty. No direct question as to the construction of the treaty was raised. The treaty established a boundary line between the United States and Great Britain, and gave each nation the right of free navigation. These were facts proper to be considered, and were not in any manner disputed or drawn in question. The question—and the only question—was whether, upon such admitted

facts, the waters north of the boundary line established by the treaty were "foreign waters," within the meaning of that term as used in the statute. Section 4370. Decision on the question whether a motion to dismiss an appeal can be made after judgment of this court is reserved. The motion will be denied.